**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| ANTHONY C. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NUMBER: 1:09-CV-48-TLS |
| | ) | |
| FORT WAYNE POLICE | ) | |
| DEPARTMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment and Designation of Evidence [DE 57], filed by the Defendants on March 4, 2010, and a Motion to Amend Documents [DE 92], filed by the Plaintiff on July 26, 2010.

**PROCEDURAL BACKGROUND**

On February 20, 2009, the Plaintiff, proceeding pro se, filed a verified § 1983 Complaint [DE 1] against the Fort Wayne Police Department and three unnamed officers, who were identified by the license plate numbers of their squad cars. In his Complaint, he seeks compensatory and punitive damages for unlawful search, excessive force, cruel and unusual punishment, color of law violations, negligence, retaliation, and harassment. His Complaint specifically references the Fourth Amendment and the Seventh Amendment to the Constitution of the United States. On March 23, the Defendants filed an Answer [DE 6]. On September 21, the Court permitted the Plaintiff to amend his Complaint to name as Defendants the officers who were identified by license plate numbers in the original Complaint, and they are George Nicklow, Ben Springer, and #10029

K-9 Unit (identified through discovery and the parties' submissions as John Drummer).

On March 4, 2010, the Defendants filed their Motion for Summary Judgment and Designation of Evidence [DE 57] and a Memorandum of Law in Support [DE 58]. The Defendants provided the following evidentiary materials: Affidavit of Officer Ben Springer [DE 57-1], to which is attached as "Exhibit A1" a narrative report of the investigation of a February 12, 2009, armed robbery; Affidavit of Officer George Nicklow [DE 57-2]; Affidavit of Officer John Drummer [DE 57-3]; and an excerpt of the Deposition of Anthony C. Martin [DE 57-4]. Consistent with Local Rule 56.1(e) and Appendix C to the Local Rules of the United States District Court for the Northern District of Indiana, they also filed a Notice of Filing Motion for Summary Judgment [DE 59], which was mailed to the Plaintiff. On March 11, the Plaintiff filed a Response and Legal and Factual Contentions [DE 61], within which is embedded an Affidavit of Anthony C. Martin. On March 26, the Defendants filed a Reply [DE 63]. On April 13, the Plaintiff filed a Statement of Undisputed Facts [DE 72].[1] On June 29, the Plaintiff filed a Statement and Factual Merits of Plaintiff's Claim, Affidavit, and Answer [DE 89], and on July 13, the Defendants filed a Response [DE 90] to this filing by the Plaintiff. On July 26, the Plaintiff filed a Motion to Amend Documents [DE 92]. Attached to this Motion are what appear to be medical records (discharge instructions) reflecting the Plaintiff's February 12, 2009, visit to Dupont Hospital. On August 9, the Defendants filed a Response to the Plaintiff's Motion to Amend Documents [DE 95].

---

[1] The secondary titles of this document are "Motion to Add, Correct, Change" and "Proposed Statement of the Case." It is unclear what the Plaintiff's intention for this document is. However, in the document, the Plaintiff does not seek leave to amend his Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), and the document is redundant and reads more like a response brief related to the Defendants' pending Motion for Summary Judgment than a pleading. Consequently, the Court understands the Plaintiff's document to be a response brief and not a motion properly seeking relief under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Indiana.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." To the extent that a verified complaint makes factual assertions consistent with the requirements for affidavits, such as whether the affiant has personal knowledge of the assertions, it may be treated as an affidavit that qualifies as evidence in opposition to summary judgment. *See Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants").

A court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA*

*Sales & Assocs.*, 550 F.3d at 609. However, the court is not required to draw every conceivable inference from the record—only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). Pursuant to a local rule governing summary judgment motions filed in this judicial district, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

Because the Plaintiff is proceeding pro se, his filings are entitled to liberal construction and are "not held to the stringent standards expected of . . . lawyers." *McCormick v. City of Chi.*, 230 F.3d 319, 325 (7th Cir. 2000). However, even as a pro se litigant, the Plaintiff is required to follow the Federal Rules of Civil Procedure and the District Court's Local Rules, and he is not excused from complying with his responsibilities as a plaintiff. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (stating that while "courts are required to give liberal construction to pro se pleadings . . . it is also well established that pro se litigants are not excused from compliance with procedural rules"); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (stating that "the Supreme Court has made clear that even pro se litigants must follow rules of civil procedure").

## FACTS ALLEGED IN THE VERIFIED COMPLAINT

In his Complaint, which is signed under penalty of perjury, the Plaintiff alleges the following facts:

> I was leaving a "convenience store" approx. 2:20 p.m. (Pontiac shopping mall) on East Pontiac Street when I noticed an unmarked police car that started to move and follow me as I left. I turned off right onto Oliver Street going south bound when I

4

noticed a fully marked police car joined in and was also following. When I turned right on Eckart and another right on Smith I noticed another fully marked police car sitting off to the side of McKee Street but on the wrong side. When I approached, the police car sped off and blocked me in. At that time the other 2 police cars sped in like a blocking fashion and ordered me out of the car at gun point screaming and yelling out commands for me to do. As soon as I opened my door, I was snatched out of my vehicle with force and was slammed to the ground striking the curb (left side of jaw and left shoulder, left wrist) by then I saw like two other white (unknown) police officers on top of me kneeing, kicking, punching me yelling stop resisting. When I was finally cuffed and placed in the back seat of the unmarked car, the white officer who had the K-9 started searching my truck and letting the dog go through it. One of the officers kept telling me "this is what you get when you fuck with the Ft. Wayne P.D. or we gonna make your life a living hell punk and other vague words." A big crowd started to form when I was let go and I went to the hospital for x-rays and extreme pain (see x-rays and documents hospital files).[2]

(Compl. 2–3.)

## FACTS PUT FORWARD BY THE DEFENDANTS

The Defendants have presented facts by way of three affidavits and an excerpt of the Plaintiff's deposition. These materials present the following facts, which contradict the facts stated by the Plaintiff in his verified Complaint.

On February 12, 2009, Defendants Springer, Nicklow, and Drummer, all police officers of the City of Fort Wayne, were on duty and were dispatched to a certain address on Eckart Street in Fort Wayne, Indiana, because of a possible armed robbery. Each officer was in full police uniform and drove a marked police vehicle. Officer Springer was dispatched at 2:05 p.m., assisted in the investigation of the armed robbery, and left the scene at 3:29 p.m. Officer Nicklow was dispatched at 2:09 p.m., assisted in the investigation, and left the scene at 2:35 p.m. Officer Drummer was

---

[2] These factual allegations are copied from the Complaint with some minor corrections of spelling, punctuation, and typographical errors made for readability purposes.

dispatched at 2:10 p.m., assisted in the investigation, and left the scene at 2:29 p.m.

Officer Springer prepared a narrative report regarding the investigation of the Eckart Street armed robbery. The narrative report, which is date stamped Thursday, February 12, 2009, at 3:24 p.m., provides a summary account of the investigation and the facts surrounding the armed robbery. It indicates that officers were dispatched to the Eckart Street address at 2:05 p.m. and that approximately five-minutes lapsed between the armed robbery incident and the dispatch.

According to the Defendant officers, the Plaintiff was not a suspect and was, in no way, involved in the police investigation of the armed robbery at the Eckart Street address. They have stated that they had no encounter or contact with the Plaintiff, his vehicle, or his property on February 12, 2009, and that none of them has ever had any encounter or contact with the Plaintiff.

At the time of the incident alleged by the Plaintiff, he was driving a green 1997 Blazer. He has testified that the police have stopped him on other occasions while he was driving this vehicle. The vehicle is owned by the Plaintiff's mother.

## FACTS STATED IN THE PLAINTIFF'S AFFIDAVIT

In his Affidavit, which is embedded in his Response to the Defendants' Motion for Summary Judgment, the Plaintiff provides the following statements regarding the facts:

> On 2/12/09, the Plaintiff did come into contact with the F.W.P.D., which did in fact stop the Plaintiff's vehicle, unlawfully searching it.
>
> The Plaintiff was in fact forcibly and physically removed from his vehicle, which resulted in injury to the Plaintiff on 2/12/09.
>
> The Plaintiff did in fact need emergency treatment after the encounter with

the F.W.P.D. on 2/12/09.[3]

(DE 61 at 8.)

## DISCUSSION

The Plaintiff brought this civil action against the Fort Wayne Police Department (not the City of Fort Wayne) and three city police officers pursuant to 42 U.S.C. § 1983. He has alleged both federal and state law claims. Section 1983 imposes liability on any "person" who, while acting under color of state law, deprives an individual of federally protected rights. 42 U.S.C. § 1983. Section 1983 authorizes claimants to sue persons in their individual capacities who are alleged to have violated such rights. *Lewis v. Downey*, 581 F.3d 467, 472–73 (7th Cir. 2009). Municipalities and other local government units are included in the persons to whom § 1983 liability applies. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (holding that a local government is liable under § 1983 for its policies that cause constitutional deprivations). A "municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. The Defendants seek summary judgment on all claims against them.[4]

The Court has before it evidentiary materials suggesting two very different stories. The Plaintiff has put forward evidentiary materials suggesting that, at around 2:20 in the afternoon of February 12, 2009, the Defendant officers followed the vehicle the Plaintiff was driving, brought

---

[3] These factual allegations are copied from the Affidavit with some minor corrections of spelling, punctuation, and typographical errors made for readability purposes.

[4] In their Motion for Summary Judgment and supporting materials, the Defendants treat the Plaintiff's allegation of "color of law violations" as a separate claim. The Court understands the Plaintiff's reference in his Complaint to "color of law violations" to be a redundant invocation of § 1983 terminology and not a separate, free-standing claim.

the vehicle to a stop, ordered the Plaintiff out of the vehicle at gunpoint, removed the Plaintiff from the vehicle with force, threw him to the ground, struck him with their knees, feet, and fists, and searched his vehicle. The Defendants have put forward evidentiary materials suggesting that they have had no contact with the Plaintiff or his vehicle and that on February 12, 2009, they were investigating an armed robbery and could not have engaged in the conduct alleged by the Plaintiff. Although the stories vary considerably, they share in common a small geographical setting (an area of a few city blocks) in the southeast quadrant of the City of Fort Wayne.

Most of the facts before the Court, which have been supplied primarily by way of affidavits, are in dispute. In considering whether a court may grant summary judgment in the face of disputed facts, the Seventh Circuit has stated:

> [A]t this stage of the proceedings, [a court] must credit [the plaintiff's] version of the facts, and resist the temptation to evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face. This is true even when the one-sidedness of the allegations cause [a court] to raise a brow. [A court] do[es] not vouch for the truth of the facts, but rather merely use[s] them to determine whether the case can be resolved as a matter of law.

*Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761–62 (7th Cir. 2006) (internal citations omitted). Because summary judgment is not well suited to resolve the sorts of factual disputes that exist on the record in this case, the Court will permit several of the Plaintiff's claims to go forward.[5]

---

[5] Embedded within the Plaintiff's Response is a "Motion to Strike" portions of the Affidavit of Officer Ben Springer and the Affidavit of Officer George Nicklow because they lack supporting evidence, are self-serving statements, and are not grounded in personal knowledge. It does not appear that these affidavits suffer from the deficiencies asserted by the Plaintiff. Furthermore, the Plaintiff failed to make this request by separate motion, *see* Local Rule 7.1(b), and the evidence submitted by the Defendants is disputed by the evidence submitted by the Plaintiff. Considering that the Court has found that genuine issues of material fact exist as to certain claims asserted by the Plaintiff, the Plaintiff's request to strike portions of these affidavits is a moot point and is denied.

## A. The Status of Defendant Fort Wayne Police Department

The Plaintiff has named the Fort Wayne Police Department, not the City of Fort Wayne, as a Defendant in this § 1983 action. In a footnote, the Defendants argue that the Fort Wayne Police Department should be dismissed because a police department cannot be sued under 42 U.S.C. § 1983. In making this argument, the Defendants rely upon a 2004 "unpublished" Seventh Circuit order (*Averhart v. City of Chi.*, 114 Fed. Appx. 246, 247 (7th Cir. 2004)), but use of this order as authority is restricted by Circuit Rule 32.1(d) of the United States Court of Appeals for the Seventh Circuit. They also rely upon *Sanders v. Town of Porter Police Dep't*, No. 2:05-CV-377, 2006 WL 2457251, at *3 (N.D. Ind. Aug. 22, 2006) (citing *Jones v. Bowman*, 694 F. Supp. 538, 544 (N.D. Ind. 1988) ("A city's police department is merely a vehicle through which the city government fulfills its policy functions and is not a proper party defendant.")). In *Pitts v. Elkhart County*, Judge Miller, the author of the opinion in *Jones*, explained that *Jones* was decided before the Supreme Court's decision in *McMillian v. Monroe County*, 520 U.S. 781 (1997), which concluded that § 1983 liability for local governments is analyzed under state law. *See Pitts v. Elkhart County*, No. 3:05-CV-38, 2007 WL 3256663, at *4 (N.D. Ind. Nov. 2, 2007). Consequently, the Defendants have not presented applicable federal and Indiana authority or adequately addressed the status of the Fort Wayne Police Department as a person for purposes of § 1983 liability. The Court will not, on its own initiative, undertake to address the various related questions on this issue that the Defendants have not properly addressed in their submissions.[6]

Accordingly, the Court will deny this aspect of the Defendant's Motion for Summary

---

[6] In their Reply, the Defendants attempt to expand the scope of their Motion for Summary Judgment by introducing an argument regarding an "official capacity" claim that they did not present in their Motion for Summary Judgment and initial Memorandum in Support.

Judgment.

B.     **The Plaintiff's Unlawful Search Claim**

The Plaintiff contends that the Defendants violated his Fourth Amendment rights by unlawfully searching the truck he was driving and having the K-9 go through the truck. The Defendants argue that the Plaintiff's claim fails because the Plaintiff has testified that the vehicle he was driving was owned by his mother and that the Plaintiff did not have a reasonable expectation of privacy in his mother's vehicle and lacks standing to claim an unlawful vehicle search. In the alternative, the Defendants argue that they did not search the vehicle.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Fourth amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quotation marks and citation omitted). For a party to establish that he has standing to claim that his Fourth Amendment rights were violated when a vehicle has been searched, he must demonstrate that he had a legitimate expectation of privacy in the vehicle at the time of the search. *United States v. Jackson*, 189 F.3d 502, 508 (7th Cir. 1998). "A reasonable expectation of privacy is present when (1) the [party] exhibits an actual or subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." *United States v. Amaral-Estrada*, 509 F.3d 820, 827 (7th Cir. 2007).

10

The Defendants have submitted an excerpt of the Plaintiff's deposition in which he stated that the vehicle was owned by his mother. However, the question of the Plaintiff's standing to claim an unlawful search of the vehicle does not turn on ownership of the vehicle. As the Seventh Circuit has explained, "[a] driver who borrows a car with the owner's permission may acquire standing to challenge a search of the vehicle only if he can establish that he has a legitimate expectation of privacy in it or in the area searched." *Id.* at 826. In his deposition, the Plaintiff also indicated that vehicle was the one that the police "always [we]re stopping [him] in." (DE 57-4 at 2.) In his verified Complaint, he states that the police snatched him out of "my vehicle" (DE 1 at 2), and in his Affidavit he states that the police stopped "the plaintiff[']s vehicle" that the vehicle was "his" (DE 61 at 8). Consequently, the Defendants' argument—that the Plaintiff lacks standing to challenge the search of the vehicle solely because his mother owned the vehicle—fails.

As to the questions whether the Defendants searched the vehicle and whether the search was lawful, the Court has before it evidentiary materials that suggest two very different stories. The Defendants have submitted evidence (their own sworn statements) suggesting that they were not involved with any search of the vehicle the Plaintiff was driving around 2:20 p.m. on February 12, 2009, and the Plaintiff has submitted evidence (his own sworn statements) that they were. These questions of fact cannot be resolved on the current record on summary judgment, and the Court will deny the Defendants' Motion for Summary Judgment as to the Plaintiff's unlawful search claim.

### C. The Plaintiff's Excessive Force Claim

The Plaintiff claims that the Defendants used excessive force when they ordered the Plaintiff out of the vehicle at gunpoint, "snatched" him out of his vehicle "with force," and "slammed" him "to the ground striking the cur[b] (left side of jaw & left shoulder, left wrist)" and when they kneed, kicked, and punched him.[7] (DE 1 at 2–3.) The Defendants request summary judgment on this claim, contending that they did not encounter or have any contact with the Plaintiff, his vehicle, or his property on February 12, 2009.

A claim that a police officer has used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen is analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). "A seizure for purposes of the Fourth Amendment is unreasonable if it is accomplished through the use of excessive force." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). "An officer's use of force is unreasonable from a constitutional point of view only if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Id.* at 539 (quotation marks omitted). The reasonableness inquiry involves a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

Again, the Court has before it evidentiary materials supporting two very different stories. The Plaintiff has attested that the Defendants followed and stopped the vehicle he was driving,

---

[7] In the Complaint, the Plaintiff also alleges that he was handcuffed and placed in the back seat of an unmarked police car.

12

ordered him out of the vehicle at gunpoint, forcibly removed him from his vehicle, slammed him to the ground, kneed him, kicked him, punched him, handcuffed him, and placed him in the backseat of a police car. The Defendant officers have attested that they have never had any encounter or contact with the Plaintiff, not even on February 12, 2009. Summary judgment is not a suitable means for resolving these factual disputes, and the Court will deny the Defendants' Motion for Summary Judgment as to the Plaintiff's excessive force claim.

### D. The Plaintiff's Cruel and Unusual Punishment Claim

The Plaintiff has alleged that the Defendants inflicted cruel and unusual punishment. The Defendants argue that they are entitled to summary judgment on this claim because the Eighth Amendment protection against cruel and unusual punishment is not applicable to the Plaintiff, who was not a sentenced prisoner being punished at any time relevant to this case.

The Eighth Amendment protects sentenced prisoners from the infliction of cruel and unusual punishment. *Lewis*, 581 F.3d at 473. Although pretrial detainees have not been convicted or sentenced, are not yet "punishable" under the law, and may not be punished in any way by the state, they can couch their excessive force claims as violations of their Fourteenth Amendment rights to due process. *Id.*

The evidentiary materials before the Court show that, at the time of the events alleged by the Plaintiff, he was neither a pretrial detainee nor a sentenced prisoner. Consequently, the Court will grant the Defendants' Motion for Summary Judgment on the Plaintiff's cruel and unusual punishment claim.

### E. The Plaintiff's Seventh Amendment Claim

In his Complaint, the Plaintiff references the Seventh Amendment in stating his cause of action. The Defendants argue that summary judgment should be granted because there is no evidence that they violated any right that the Plaintiff had to a trial by jury in any civil case.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. It does not appear that the conduct of the Defendants alleged in the Complaint in any way implicates the Plaintiff's Seventh Amendment right to a jury trial, and accordingly the Court will grant the Defendants' Motion for Summary Judgment on the Plaintiff's Seventh Amendment claim.[8]

### F. The Qualified Immunity Defense

The Defendants argue that the doctrine of qualified immunity protects them from liability because they never encountered or had any contact with the Plaintiff, did not use any force against the Plaintiff, did not conduct a vehicle search, and thus did not violate any of the Plaintiff's constitutional rights. In one short sentence that is accompanied by no further argument or analysis, they assert that, "even assuming a constitutional violation occurred, it would not have been clear to a reasonable officer that the defendants' conduct was unlawful in the situation that they confronted." (Defts.' Mem. in Supp. 10.)

---

[8] In his Response, the Plaintiff states that "the Seventh Amendment secures the plaintiff the right to a jury and would like to exercise its domain." (DE 61 at 9.) From the Court's review of the record, it does not appear that the Plaintiff made a written demand for a jury trial until June 29, 2010, in his Statement and Factual Merits of Plaintiff's Claim, Affidavit, and Answer [DE 89].

The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *McAllister v. Price*, --- F.3d ---, ---, No. 10-1213, 2010 WL 3169326, at *3 (7th Cir. Aug. 12, 2010). When evaluating a claim of qualified immunity, courts consider (1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right was clearly established at the time of the defendant's alleged violation. *Id.* Courts may address these two questions in the order they believe best suits the circumstances of the particular cases at hand. *Id.* Qualified immunity is a fact-intensive analysis. *See Ienco v. City of Chi.*, 286 F.3d 994, 1001 (7th Cir. 2002). In considering whether a constitutional violation occurred, courts examine the facts in a light most favorable to the party asserting an injury. *Gonzalez*, 578 F.3d at 540. "When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Id.*

As explained above, the Court has before it evidentiary materials that call into dispute the facts put forward by the Defendants, and consequently genuine issues of material fact exist as to the alleged deprivations of the Plaintiff's Fourth Amendment rights to be free from an unlawful search and from the use of excessive force by the police. The qualified immunity inquiry cannot be disentangled from the disputed facts. Viewing the facts in the light most favorable to the Plaintiff, who is the non-movant, the Plaintiff's claims that the Defendants deprived him of constitutional rights are supported by evidence in the record. Furthermore, there is no evidence before the Court having the tendency to show that the Plaintiff had committed, was committing, or was about to commit any crime; that there was probable cause or reasonable suspicion that would warrant the seizure of the Plaintiff and the search of his vehicle; or that exigent circumstances existed. At the

15

time of the incident alleged in the Complaint, it was clearly established that a police officer may not unlawfully search property or use excessive force (e.g., removing an individual forcibly from a vehicle, throwing him to the ground, and kneeing, kicking, and hitting him) in detaining an individual when the individual has committed, is committing, or is about to commit no crime, when probable cause and reasonable suspicion are lacking, and when there are no exigent circumstances. Consequently, the Court finds that the doctrine of qualified immunity does not warrant summary judgment in favor of the Defendants on the Plaintiff's § 1983 claims, and the Defendants' Motion for Summary Judgment will be denied as to qualified immunity.

### G. The Plaintiff's Claim for Punitive Damages

The Plaintiff's prayer for relief includes a request for punitive damages. The Defendants argue that they should be granted summary judgment on his claim for punitive damages because there is no evidence that the Defendants' alleged conduct was motivated by evil motive or intent or that their alleged conduct involved reckless or callous indifference to the Plaintiff's federally protected rights. They also highlight the evidence they have submitted showing that they never encountered or had any contact with the Plaintiff, did not use any force against the Plaintiff, did not conduct a vehicle search, and did not violate any of the Plaintiff's constitutional rights.

The Seventh Circuit has provided the following instructions regarding punitive damages when Fourth Amendment rights are implicated:

> [T]he Fourth Amendment does not only protect people accused of crimes. The law recognizes that law-abiding citizens can sue and recover general (or presumed) damages for a Fourth Amendment violation, even without proof of injury. Additionally, punitive damages are recoverable under Section 1983 even in the absence of actual damages where the jury concludes that the defendant's conduct

16

was motivated by evil intent or involved reckless or callous indifference to the
federally-protect rights of others. In the end, it will be for the jury to decide the
proper quantum of relief, if any, for [the defendant's] violation of the [plaintiffs']
Fourth Amendment rights.

*Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (citations, quotation marks, and alteration omitted); *see also Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others."). A municipality may not be held liable for punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Robinson v. City of Harvey, Ill.*, --- F.3d ---, ---, No. 09-2434, 2010 WL 3069566, at *1 (7th Cir. Aug. 6, 2010).

Considering the facts in dispute and the evidence before the Court and viewing the facts in a light most favorable to the Plaintiff, the evidence is such that a reasonable jury could return a verdict for the Plaintiff on his claim for punitive damages—in his verified Complaint, the Plaintiff has claimed harassment, retaliation, and vindictiveness by the Defendant officers and has alleged violations of his federally-protected rights. Consequently, the trier of fact will have to determine this and other questions of fact, and the Court will deny the Defendants' Motion for Summary Judgment on the Plaintiff's claim for punitive damages.

### H.     The Plaintiff's Negligence, Retaliation, and Harassment Claims

The Plaintiff has claimed negligence, retaliation, and harassment by the Defendants, and they seek summary judgment on these claims. They contend that the Plaintiff failed to comply with the notice provisions of the Indiana Tort Claims Act, citing Indiana Code §§ 34-13-3-8 and 34-13-

17

3-13, and that the Plaintiff's state law claims are barred.[9] There is no evidence in the record before the Court that the Plaintiff provided such notice. The Court will grant the Defendants' Motion for Summary Judgment as to the Plaintiff's state law claims against Defendant Fort Wayne Police Department because the Plaintiff failed to comply with the notice provisions of the Indiana Tort Claims Act, Ind. Code. § 34-13-3-8(a) ("[A] claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision; and (2) the Indiana political subdivision risk management commission created under IC 27-1-29; within one hundred eighty (180) days after the loss occurs.").

## I. The Plaintiff's Motion to Amend Documents

The Plaintiff asks for leave to amend documents or to make documents part of the record in this case. The documents attached to the Plaintiff's Motion appear to be medical records (discharge instructions) from Dupont Hospital related to the injuries he claims the Defendants caused. The documents suggest that the Plaintiff was examined at Dupont Hospital on February 12, 2009, for a sprained wrist and a deep bruise (contusion). These documents are not properly submitted for consideration on any pending issue, and the Court will deny the Plaintiff's Motion without prejudice.

---

[9] In his Response, the Plaintiff focuses on the alleged violations of his Fourth Amendment rights, but he says little regarding his state law claims. He may intend to abandon his state law claims, but the record is not clear. In their submissions, the Defendants request summary judgment in their favor on the Plaintiff's state law claims, but their argument focuses primarily on the Plaintiff's state law claims against the governmental entity, not the individual officers, and issues of fact exist regarding whether the officers were acting within the scope of their employment when they engaged in the alleged conduct. Likewise, the Defendants do not address the theories of relief put forward by the Plaintiff or the merits of the individual state law claims; instead, their request for summary judgment rests on two provisions of the Indiana Tort Claims Act. The Court will limit its analysis here to the issues presented by the Defendants in their submissions, but there remain questions regarding the Plaintiff's state law claims that will have to be resolved as this case goes forward.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment and Designation of Evidence [DE 57]. The Defendants' Motion is GRANTED as to the Plaintiff's Seventh Amendment (jury trial) and Eighth Amendment (cruel and unusual punishment) claims and the Plaintiff's state law claims against Defendant Fort Wayne Police Department, but DENIED as to the Plaintiff's Fourth Amendment claims (unlawful search and excessive force), the Plaintiff's claim for punitive damages, and the Plaintiff's state law claims against the Defendant officers. The Court DENIES WITHOUT PREJUDICE the Plaintiff's Motion to Amend Documents [DE 92]. By a separate order, the Court will set this matter for a status conference.

SO ORDERED on August 23, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT